**ANCHOR CASUALTY COMPANY,**
**Appellant,**

**v.**

**ROBERTSON TRANSPORT COMPANY,**
**Appellee.**

**No. 53.**

Court of Civil Appeals of Texas.

Corpus Christi.

March 25, 1965.

Rehearing Denied April 15, 1965.

Carey Williams, Houston, for appellant.

John L. McConn, Jr., of Butler, Binion, Rice & Cook, Houston, for appellee.

NYE, Justice.

Anchor Casualty Company, appellant, as intervenor, sued Robertson Transport Company for the sum of Two Thousand Two Hundred Dollars ($2,200.00) based upon the amount that it had paid to Clyde Haynes on a policy of collision insurance. Anchor succeeded to all of the rights of Haynes by subrogation with reference to an alleged claim against Robertson.

Haynes owned a truck that was leased to Robertson. Anchor carried the collision insurance on the truck. The truck was wrecked due to the negligence of Robertson while in its possession and control. Anchor paid Haynes' claim for the damage suffered and then intervened in this suit against Robertson. Anchor seeking the amount it had paid Haynes alleged that the truck was under a contract of bailment from Haynes requiring Robertson to be responsible for the damage caused by his negligence. Robertson's suit against Haynes was dismissed, leaving only the suit by Anchor against Robertson, which was tried before the court without the intervention of a jury. Robertson, in effect, defended on the basis that the contract of bailment was a special contract relieving it from any liability. Judgment was entered against Anchor that it take nothing from Robertson.

Anchor, perfecting its appeal to this Court, contends in three points that the trial court erred in refusing to render judgment for Anchor because: (1) the necessary elements for recovery were proved as a matter of law; (2) the only affirmative defense plead by Robertson was proved by Anchor to have no basis in fact; and (3) the only reason assigned by the trial court for refusing to render judgment for Anchor is immaterial as a matter of law and does not support the judgment rendered. All of these points will be considered together.

The trial court found that it was never within the contemplation of Haynes and Robertson that Robertson would be held liable to Haynes or anyone claiming by or through Haynes for damages to the truck

while it was in the care, custody and control of Robertson. The trial court concluded that Haynes could not recover from Robertson for the damage to the truck because such recovery was not within the contemplation of the parties at the time Haynes and Robertson entered into the contract and therefore Anchor as subrogee of Haynes and standing in the shoes of Haynes cannot recover from Robertson for the damage to the truck.

The lease in question was entered into by Haynes and Robertson after a series of negotiations. The lease provided in effect that Robertson would operate the truck and receive a set percentage of the gross take for its services. Thereafter, all of the expenses of the operation were to be deducted and the balance remaining, if any, was to be turned over to Haynes. If there was not sufficient revenue to cover the expenses of operation it was to be carried forward and deducted from any future amounts that Haynes would subsequently become entitled to. The contract provided that Haynes would personally drive and operate the truck. If it ever became necessary to substitute a driver, then such substitute operator would have to be approved by Robertson; otherwise, the contract would become null and void. A former employee of Haynes was driving the truck at the time of the damage, working, however, under the direction of Robertson. The contract further provided that Robertson was to deduct from the gross revenue before any payment was made to Haynes, the cost of collision insurance *"for the protection of the equipment* (the truck in question) *described herein."*

The contract further provided that

" * * * if the lessor (Haynes) already has fire, theft and collision insurance on his equipment, and the premium has already been paid, then the lessor shall be required to furnish to the lessee (Robertson) before this lease is effective, an endorsement from his fire, theft and collision carrier *showing that the lessee (Robertson) is an additional insured under the lessor's (Haynes) fire, theft and collision coverage."*

Robertson contends that it was made clear by the terms of the lease that any loss or damage to the truck would be borne by insurance and not by Robertson or Haynes individually. To substantiate this position, Robertson points out that the lease agreement specifically provided for collision insurance for the protection of the vehicle; that the cost of such insurance was to be borne by Haynes, either by providing for insurance initially or to permit the cost of such insurance to be deducted by Robertson from proceeds which otherwise would go to Haynes; and that if Haynes already had collision insurance he was required to obtain an endorsement showing Robertson to be an additional insured under the collision coverage before the lease was to become effective. Robertson further contends that it was established by the evidence, and/or found by the trial court, that it was never the intention of the contracting parties (Haynes and Robertson) that either of them would bear any loss from damage to the truck, in that the evidence showed: that both Haynes and Robertson thought that Haynes had collision insurance initially protecting both parties from damages to the vehicle; that Robertson relied on Haynes' statement that he had such insurance initially, and further that Haynes would secure an endorsement showing that Robertson was an additional insured on his collision insurance policy. We agree with Robertson's contentions.

The record showed that Robertson and Haynes believed that the truck in question was insured for loss caused by a collision. Haynes had collision coverage prior to the lease of the truck in question to Robertson, but the insurance either expired by its own terms, or was inadvertently cancelled by Haynes prior to the time the lease went into effect. During negotiations of the lease it developed that the truck was mortgaged by Haynes to his

bank. One of Robertson's employees testified to the effect, that he too believed that Haynes had the collision coverage insurance because it was the usual policy of banks to require such coverage to protect the chattel that was mortgaged. Robertson's employee contacted Haynes on several occasions prior to the loss requesting Haynes to send them the collision endorsement naming Robertson as an additional insured. Each time Haynes would be surprised that Robertson had not already received such endorsement, and would then go on to assure them that he would obtain the endorsement. No endorsement for Robertson was ever obtained by Haynes. Actually, Haynes did not have collision insurance on the truck during the several months the truck was leased to Robertson and not until it was brought finally to Haynes' attention by his banker and a collision binder or coverage was obtained from Anchor a few days before the loss.

It is the law generally that where a chattel is delivered to a bailee in good condition and is not returned, or returned in a damaged state caused by the negligence of the bailee, the bailor is entitled to his damages. 8 Tex.Jur.2d 264, § 50; Louisiana & Arkansas Railway Co. v. Priddy, 355 S.W.2d 835 (Tex.Civ.App.1962, err. dism.); Big "D" Auto Auction, Inc. v. Hightower, 368 S.W.2d 881 (Tex.Civ.App. 1963). However, the application of the general principles of the law of bailment may be abrogated by the parties who may make their own contract in reference to their mutual rights and liabilities. Sanchez v. Blumberg, 176 S.W. 904 (Tex.Civ.App. 1915); Brazos River Gas Co. v. McGarr, 113 S.W.2d 643 (Tex.Civ.App.1938); 8 Tex.Jur.2d 256, § 39. They may be express contract, enlarge, abridge, qualify or supersede the obligations which otherwise would arise from the bailment by implication of law. 8 Am.Jur.2d 1021, § 127; Callihan v. Montrief, 71 S.W.2d 564 (Tex.Civ.App. 1934, err. ref.); Langford v. Nevin, 293 S.W. 673 (Tex.Civ.App.1927); Munger Automobile Co. v. American Lloyds of Dallas, 267 S.W. 304 (Tex.Civ.App.). If such contract is not contrary to public policy there is nothing inherently bad about a contract provision which exempts one of the parties from liability for its own negligence. The validity of an arrangement whereby a bailee contracts with the bailor to procure insurance covering the bailed property is valid and not contrary to public policy. Either the bailor or the bailee may insure, or by special contract require one party or the other to insure, the bailed property for the joint benefit of both parties. See 8 C.J.S. Bailments § 23, p. 378. Collision insurance protecting the bailee from his own negligence or the negligence of his employees may be required by special contract through a course of dealings which establishes a standard of conduct between the parties. Robertson's employee testified, without objection, that the provision requiring Haynes to furnish Robertson with an endorsement from his collision insurance carrier naming Robertson as an additional insured, was the usual provision that Robertson, as well as any other truck people around there usually required from the lessor. 13 Tex. Jur.2d § 129.

Appellant Anchor admits that the parties to a bailment may expressly limit the tort liability of the bailee by the express provision of the contract of bailment but such limitation of liability will not be implied and provisions in the contract alleged to have such effect will be strictly construed and will not be held to have such effect unless no other meaning may reasonably be ascribed to the language imposed. Citing Langford et al. v. Nevin, 117 Tex. 130, 298 S.W. 536 (1927).

We recognize the rule that requires a strict construction of the terms of the contract exonerating the bailee from liability for its own negligence. Wichita City Lines, Inc. v. Puckett, 156 Tex. 456, 295 S.W.2d 894 (1956). This case, cited by Anchor, is distinguishable by the facts. In this Wichita City Lines case, a building

was occupied by a lessee and was damaged by fire caused by the negligence of the lessee. The building was insured by the lessor. The lessee contended that the insurance was for his protection and benefit and predicated this contention on a single phrase in the lease, i. e. "Lessor agrees to carry his own insurance against loss by fire, etc., on the entire building." The Supreme Court held that this provision did not impose any obligation on the lessor to take out any insurance to protect himself or the lessee. The lease contract provided that in the event of fire, and should the lessor deem it unfit for occupancy, he could decide not to repair, and terminate the lease. The court held that this was inconsistent with any intention in the insurance provision (above quoted) to protect the interests of the lessee.

 The subject contract provided for collision insurance for the protection of the vehicle. This was during the period of time that the vehicle was under the care, custody and control of Robertson. Haynes testified that he never intended to hold Robertson responsible for the bailed truck. Haynes stated that during a discussion of subrogation possibilities with Anchor that he protested to Anchor's insurance adjuster when advised that Anchor might look to Robertson to recoup its loss. Haynes said: "And when they told me that, I protested, because I did not want them to go to Robertson Transport because that was not my intent. I have my truck insured and I did not look to anyone to carry the insurance for me." If there is any doubt in construing the lease agreement, then the party's construction of his own language constitutes the highest evidence of his intentions. Where the parties to an instrument in writing have by their acts and conduct placed a construction upon the same, showing their intentions, then such acts and conduct should be given strong weight in arriving at the intention of the parties in the execution of the instrument, and, in the absence of clear language in such instrument indicating an intention to the contrary of the parties as expressed by their acts and conduct, the courts should adopt the construction of such instrument as placed upon it by the parties thereto. 14 Tex.Jur. pp. 924, 925; 13 Tex.Jur.2d § 128; Col-Tex Refining Co. v. Coffield & Guthrie, Inc., 264 S.W.2d 462, (Tex.Civ.App., err. ref. 1954); Zeppa v. Houston Oil Co. of Texas, 113 S.W.2d 612 (Tex.Civ.App.1938, err. ref.); Lone Star Gas Co. v. X-Ray Gas Co., 139 Tex. 546, 164 S.W.2d 504 (1942); City of Fort Worth v. Barlow, 313 S.W.2d 906 (Tex. Civ.App.1958, ref., n. r. e.).

There is ample evidence that Haynes lead Robertson to believe that the truck in question was covered by collision insurance at the time that the contract of bailment was entered into, and several times subsequently. The record further shows that Robertson relied upon these representations. Booty v. O'Connor, 287 S.W. 282 (Tex.Civ. App.1926, err. ref.); 22 Tex.Jur.2d 660, Estoppel, § 1 and following.

 It is, of course, fundamental that a subrogee stands in the shoes of the subrogor and in absence of some special contract arrangement has no greater rights than those of the subrogor. Fox v. Kroeger, 119 Tex. 511, 35 S.W.2d 679, 77 A.L.R. 663 (1931); San Antonio Cattle Loan Co. v. Blalack & Son, 256 S.W. 974 (Tex.Civ. App.1923), affirmed Sup.Ct. 267 S.W. 474; 39 Tex.Jur. 795, § 35, Subrogation. We hold that under the facts before us, for the reasons stated herein, Haynes could not have recovered the damages to the bailed truck from Robertson. It therefore follows that since Anchor admits that it stands in the shoes of Haynes, the trial court was correct in denying Anchor's claim against Robertson. Appellant's points are overruled. The judgment of the trial court is affirmed.