United States Court of Appeals,

Fifth Circuit.

No. 93-1154.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Plaintiff-Appellee-Cross-Appellant,

v.

CARE FLIGHT AIR AMBULANCE SERVICE, INC., ET AL., Defendants-Appellees,

General Electric Capital Corp. and Avemco Insurance Co., Defendants-Appellants-Cross-Appellees.

April 12, 1994.

Appeals from the United States District Court for the Northern District of Texas.

Before REAVLEY and DAVIS, Circuit Judges, and ROSENTHAL,[*] District Judge.

ROSENTHAL, District Judge:

On March 3, 1989, General Electric Capital Corporation, ("GECC"), leased a Piper Cheyenne 400LS aircraft to Care Flight Air Ambulance Service, Inc. ("Care Flight"). The lease prohibited Care Flight from subleasing the aircraft without GECC's consent, and required Care Flight to insure the plane. On March 5, 1989, Care Flight obtained an insurance policy from National Union Fire Insurance Co. of Pittsburgh, PA. ("National Union"). The policy contained a war risk endorsement and a breach of warranty endorsement. The breach of warranty endorsement named GECC as a beneficiary along with the named insured, Care Flight. The breach of warranty endorsement contained a clause excluding coverage for

_____

[*]District Judge of the Southern District of Texas, sitting by designation.

1

loss due to conversion by or at the direction of the named insured. GECC's interest in the plane was insured by AVEMCO.

Without seeking authorization from GECC, Care Flight subleased the aircraft to James Coltharp ("Coltharp"), an admitted violation of the lease. Coltharp in turn subleased it to Anthony Contraras ("Contraras"). There was a dispute in the summary judgment evidence as to whether Care Flight participated in or knew of this sublease to Contraras. It is undisputed that Contraras flew the plane to several Central American countries, and that while the aircraft was in Contraras's possession, the Colombian government seized the plane for violation of Colombian air traffic laws.

GECC was notified by Care Flight on September 1, 1989 that the aircraft had been confiscated. The aircraft was not returned to the United States until almost three years later. Before the plane was returned, AVEMCO paid GECC, its insured, $2.5 million for the plane. Asserting subrogation rights, AVEMCO demanded that National Union pay AVEMCO under National Union's policy with Care Flight. National Union then filed this declaratory relief action and moved for summary judgment that coverage was precluded because Care Flight had converted the plane.

The district court granted summary judgment in favor of National Union, ruling that Care Flight had converted the aircraft as a matter of law and that the conversion limitation in the breach of warranty endorsement precluded coverage. Final judgment was entered on February 16, 1993.

In this appeal, GECC and AVEMCO assert that the district court

2

erred in finding that Care Flight had converted the plane and in holding that the conversion limitation in the breach of warranty endorsement precluded coverage. National Union cross-appealed from the district court's refusal to award part of National Union's attorneys' fees incurred in its dispute with GECC and AVEMCO.

I. Standard of Review

This court reviews summary judgments *de novo*. *Fireman's Fund Ins. Co. v. Murchison,* 937 F.2d 204, 207 (5th Cir.1991); *Mozeke v. International Paper Co.,* 856 F.2d 722, 725 (5th Cir.1988). The issue before this court is whether any questions of material fact exist that bar the moving party from judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25, 106 S.Ct. 2548, 2552-54, 91 L.Ed.2d 265 (1986); *American Economy Ins. Co. v. Tomlinson,* 12 F.3d 505, 507 (5th Cir.1994). In making this determination, this court must view all fact questions in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *United States v. Park Towers, Inc.,* 8 F.3d 306, 309 (5th Cir.1993). This court reviews matters of contract interpretation *de novo*. *Travelers Ins. Co. v. Liljeberg Enterprises, Inc.,* 7 F.3d 1203, 1206 (5th Cir.1993); *Matador Drilling Co. v. Post,* 662 F.2d 1190, 1197 (5th Cir.1981).

II. The Relevant Policy Language

National Union's policy contained a breach of warranty endorsement insuring against physical damage to the aircraft. The endorsement provided in part as follows:

1. As to the interest of the said Lienholder only, the Insurance afforded by any Physical Damage Coverage of this policy shall not be invalidated by any act or neglect of the Named Insured nor by any change in the title or ownership of the aircraft but conversion, embezzlement or secretion by or at the direction of the Named Insured is not covered hereunder; provided however that:

(a) in case the Named Insured shall neglect to pay any premium due under this policy the Lienholder shall, on demand, pay the premium; and

(b) the Lienholder shall notify the Company of any change of title or ownership of the aircraft or apparent increase of hazard, which shall come to the knowledge of the Lienholder, and, unless permitted by this policy, it shall be endorsed thereon and the Lienholder shall, on demand, pay the premium for such increased hazard.

(III R. 35).

Page 2 of the main body of the insurance policy contained the policy's coverage exclusion. Paragraph 6(a) of the policy excluded from coverage "loss or damage due to conversion ... by any person in possession of the aircraft under a bailment, lease ... or other encumbrance." (III R. 25).

The policy also included a war risk endorsement, which provided that "notwithstanding anything in the policy to the contrary," the policy covered physical loss of or damage to the aircraft if caused by "[c]onfiscation, nationalisation [sic], seizure, restraint, detention, appropriation, requisition for title or use by or under the order of any Government." (III R. 31). Both the breach of warranty endorsement and the war risk endorsement stated that "[n]othing herein contained shall vary, alter, waive or extend any of the terms, provisions, representations, conditions or agreements of the policy other than as above stated." (III R. 31, 35)

4

III. Conversion As a Matter of Law

The district court found that the unauthorized sublease, resulting in the confiscation, was a conversion as a matter of law. Texas law defines conversion as "the unauthorized and unlawful exercise of dominion and control over property inconsistent with or to the exclusion of another's superior rights in that property." *Vickery v. Texas Carpet Co.,* 792 S.W.2d 759, 762 (Tex.App.—Houston [14th Dist.] 1990, writ denied); *Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444, 446 (Tex.1971). Under Texas law, wrongful intent is not an element of conversion. *Killian v. Trans Union Leasing Corp.,* 657 S.W.2d 189 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.). GECC and AVEMCO claim that because Care Flight's conduct breached its lease contract, such conduct cannot as a matter of law constitute the tort of conversion.

Texas law has long distinguished tort liability from contract liability as between the parties to a contract, seeking to avoid the availability of both tort and contract liability for the same conduct and the same kind of harm or loss. *See Southwestern Bell Telephone Co. v. DeLanney,* 809 S.W.2d 493 (Tex.1991); *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617 (Tex.1986); *Mid-Continent Aircraft Corp. v. Curry County Spraying Service Inc.,* 572 S.W.2d 308, 312 (Tex.1978). However, the Texas cases also recognize that when certain legal relationships exist between contracting parties, the law may impose affirmative duties that are separate and apart from the contractual promises made between those parties. To determine whether conduct that breaches a contract can also be a

tort, Texas law requires a court to look to the origin of the duty owed and the nature of the resulting injury. 809 S.W.2d at 494-95.

In *Southwestern Bell Telephone Co. v. DeLanney,* the Texas Supreme Court described the relevant inquiry into the origin of the duties owed, as follows:

> As one prominent authority has explained: "Tort obligations are in general obligations that are imposed by law—apart from and independent of promises made and therefore apart from the manifested intention of the parties—to avoid injury to others." W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton On the Law of Torts* § 92 at 655 (5th Ed.1984).... If the defendant's conduct—such as negligently burning down a house—would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct—such as failing to publish an advertisement—would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract.

809 S.W.2d at 494.

In *Southwestern Bell v. DeLanney,* the plaintiff sued over Southwestern Bell's breach of its promise to print plaintiff's advertising in the "yellow pages." The Texas Supreme Court examined the origin of the duties between the parties and found that the only duty breached arose from the contract itself. The court held that the plaintiff therefore had no tort claim.

In this case, Care Flight owed GECC a contractual duty not to sublease the aircraft without GECC's consent. However, under the Texas law of bailment, Care Flight also owed GECC a tort-based duty not to exercise unauthorized dominion and control over the leased plane inconsistent with, or to the exclusion of, GECC's superior rights in the plane. *Vickery,* 792 S.W.2d at 762. Care Flight's unauthorized sublease of the plane to Coltharp was admittedly a

6

breach of the contract. The issue is whether it also breached Care Flight's separate and independent obligation originating under the Texas tort law of conversion.

Texas courts have specifically recognized that because the law of conversion and bailment imposes legal duties outside any contractual agreements, separate causes of action for breach of contract and conversion may arise from the same facts. For example, in *Vickery,* 792 S.W.2d at 762-63, the court held that a breach of contract and a conversion claim both arose when the defendants failed to pay an invoice for goods delivered and kept the goods. Similarly, in *Allied Bank of Texas v. Plaza DeVille Assoc.,* 733 S.W.2d 566 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.), the court held that the defendant's wrongful withholding of rental proceeds constituted a conversion; in *High Plains Wire Line Services Inc. v. Hysell Wire Line Service, Inc.,* 802 S.W.2d 406, 410 (Tex.App.—Amarillo 1991, no writ), the court found for conversion arising out of an alleged breach of a purchase agreement; and in *Virgil T. Walker Const. Co., Inc. v. Flores,* 710 S.W.2d 159 (Tex.App.—Corpus Christi 1986, no writ), the court found a claim for conversion and a claim for breach of contract from a failure to relinquish control over construction machinery after a sale.

Appellants do not dispute that under Texas law, a claim for breach of contract and the tort of conversion can arise from the same facts. Appellants argue that there cannot be a separate tort here because the lease between GECC and Care Flight abrogated the

7

rights and duties arising under the common law of conversion and bailment.

Appellants cite *Anchor Casualty Co. v. Robertson Transport Co.,* 389 S.W.2d 135, 138 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.), for the proposition that parties may, by express contract, "enlarge, abridge, qualify or supersede the obligations which otherwise would arise from the bailment by implication of the law." *Id.* (citations omitted). *Anchor Casualty* involved collision insurance for the protection of a leased truck. The parties to that lease agreed that the lessee would not be liable for any loss to the truck, and the court relied on the parties' mutual understanding of the lease agreement in denying subrogation rights. 389 S.W.2d at 139. By contrast, the lease in this case expressly placed the entire risk of loss on Care Flight, the lessee, (III R. 153), and provided that "[n]o remedy referred to herein is intended to be exclusive, but each shall be cumulative and *in addition to any other remedy referred to above or otherwise available to Lessor at law or in equity,*" (III R. 156) (emphasis added). Rather than expressly abrogating the rules of tort liability, or the duties imposed through the law of bailment, the lease at issue here retained the lessor's right to assert all common law remedies.

In addition to looking to the origin of the duties, the Texas courts also look to the nature of the injury to determine whether a claim is for contract, tort, or both. The general rule is that where a defendant's conduct breaches an agreement between the parties and does not breach an affirmative duty imposed outside the

8

contract, the plaintiff ordinarily may not recover on a tort claim if the damages are economic losses to the subject matter of the contract. *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986).

GECC and AVEMCO assert that the conduct here not only violated duties imposed outside the contract, but also caused injuries that go beyond economic losses to the subject matter of the contract. They point to the loss of use of the aircraft for over three years, well beyond the four-month lease term, and the repair costs for the damage the aircraft received during the unauthorized sublease and confiscation.

The Texas cases clearly hold that a plaintiff asserting negligent failure to perform a contract does not have a tort cause of action when the only injury is economic harm to the subject of the contract itself. *Jim Walter Homes,* 711 S.W.2d at 618.[1] By

---

[1]The Texas cases have sharply divided as to whether there must be proof of tort damages separate and independent from damages for breach of contract when the conduct violates duties independent of the contract. *See, e.g., Prudential Insurance Co. v. Jefferson Associates, Ltd.,* 839 S.W.2d 866, 876 (Tex.App.—Austin 1992, writ granted) (damages for conduct that is both fraud and a breach of contract are recoverable even though the measure of damages is the same for the tort and the breach of contract); *Schindler v. Austwell Farmers Cooperative,* 829 S.W.2d 283, 290-91 (Tex.App.—Corpus Christi), *aff'd as modified on other grounds,* 841 S.W.2d 853 (Tex.1992) (no requirement that damages independent from the injuries for breach of contract must be proven to recover for fraud); *but see Barbouti v. Munden,* 866 S.W.2d 288, 293-94 (Tex.App.—Houston [14th Dist] 1993, writ filed) (a fraud cause of action will not arise where the only damages are for breach of the contract); *Central Savings & Loan Assoc. v. Stemmons Northwest Bank,* 848 S.W.2d 232 (Tex.App.—Dallas 1992, no writ) (a cause of action sounds in contract and not tort where the only injury is economic loss to the subject matter of contract); *Hebisen v. Nassau Development Co.,* 754 S.W.2d 345, 348 (Tex.App.—Houston [14th Dist.] 1988,

contrast, the Texas courts have consistently found claims for both conversion and breach of contract based on a single set of facts and a single injury. *See Vickery,* 792 S.W.2d at 762; *Plaza National Bank v. Walker,* 767 S.W.2d 276 (Tex.App.—Beaumont 1989, writ denied); *Allied Bank,* 733 S.W.2d at 566; *see also, Ames v. Great Southern Bank,* 672 S.W.2d 447 (Tex.1984); *Prewitt v. Branham,* 643 S.W.2d 122 (Tex.1982). The Texas courts have not held that in order to allege both a breach of contract and the tort of conversion, the conversion damages must be separate and distinct from the contract damages.

Given the record before this court and the Texas law, the district court correctly found that the fact that Care Flight breached its lease contract did not preclude a finding that Care Flight also committed the tort of conversion.

The district court was also correct in holding that Care Flight's initial lawful possession of the plane by Care Flight did not preclude a finding of conversion. "One who is authorized to make a particular use of a chattel, and uses it in a manner exceeding the authorization, is subject to liability for conversion to another whose right to control the use of the chattel is thereby seriously violated." *Restatement (Second) of Torts* § 228 (1965).

---

writ denied) (even if the breach of a lease is also the tort of fraud, there is no claim for fraud if the only damages are failure to pay the basic amounts); *see also C & C Partners v. Sun Exploration & Production Co.,* 783 S.W.2d 707, 719-20 (Tex.App.—Dallas 1989, writ denied) (recovery for both fraud and breach of contract is precluded by a failure to prove actual damages arising from the tort). The Texas Supreme Court has not resolved this conflict.

Texas generally follows the elements of conversion as stated in the *Restatement,* which provides that "[t]he limits of the permitted use ordinarily are determined by the terms, express or reasonably implied, of the contract or other agreement between the parties, and the question becomes one of whether there is a material breach of the agreement." *Id.* at Cmt. C.

The district court correctly determined that the unauthorized sublease of the aircraft was a material breach. Texas law recognizes the distinction between serious violations of another's right of control, which constitute conversion, and minor or technical violations insufficient in degree of interference to constitute conversion.

The several reported cases on point are all consistent with this result. In *Swish Mfg. Southeast v. Manhattan Fire & Marine Ins.,* 675 F.2d 1218 (11th Cir.1982), the Eleventh Circuit held that a conversion exclusion in an insurance policy precluded coverage where a leased aircraft was used to transport marijuana, in violation of the lease agreement, and was subsequently confiscated by the Bahamian government. 675 F.2d at 1219. Relying on § 228 of the *Restatement,* the court concluded that, under Georgia law, the conversion exclusion applied. *Id.* at 1220. The applicable Georgia law was the same in relevant respects as Texas conversion law. *See also, National Union Fire Ins. Co. v. Carib Aviation, Inc.,* 759 F.2d 873 (11th Cir.1985); *Gelder v. Puritan Ins. Co.,* 100 N.M. 240, 241, 668 P.2d 1117, 1118 (1983).

Appellants' assertion that there could be no conversion

because National Union made no formal demand is not supported by Texas law. Formal demand and refusal are not necessary if demand would be useless, or "if the possessor's acts amount to a clear repudiation of the owner's rights." *Bures v. First National Bank, Port Lavaca,* 806 S.W.2d 935 (Tex.App.—Corpus Christi 1991); *see also Permian Petroleum Co. v. Petroleos Mexicanos,* 934 F.2d 635, 651 (5th Cir.1991). Demand and refusal are not necessary if other proof demonstrates a conversion. *Presley v. Cooper,* 155 Tex. 168, 284 S.W.2d 138, 141 (1955).

It is undisputed that the aircraft at issue was confiscated by the government of Colombia. GECC's formal demand to Care Flight to return the aircraft would have been useless. Moreover, there was other proof that a conversion occurred so that demand and release were not necessary as a matter of law. *Presley,* 284 S.W.2d at 141.

The district court's summary judgment that Care Flight converted the aircraft is affirmed.

IV. Coverage Under the Policy

Appellants challenge the district court's holding that the exception to the breach of warranty endorsement for conversion precluded coverage under the policy. Appellants argue that the war risk endorsement extended coverage for losses caused by a confiscation.

Under Texas law, insurance contracts are subject to the same rules of interpretation that govern other contracts. *Forbau v. Aetna Life Ins. Co.,* --- S.W.2d ----, ----, 1994 WL 2810 at * 1, 1994 Tex. LEXIS 14 at * 4 (January 5, 1994); *Upshaw v. Trinity*

12

*Cos.,* 842 S.W.2d 631, 633 (Tex.1992). The interpretation of a contract, including the question of whether or not a contract is ambiguous, is a legal determination to be made by a court. *National Union Fire Ins. Co. v. Kasler Corp.,* 906 F.2d 196 (5th Cir.1990); *Praeger v. Wilson,* 721 S.W.2d 597 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.). The court's primary concern is to give effect to the written expression of the parties' intent. *Forbau,* --- S.W.2d at ----, 1994 WL 2810 at * 1, 1994 Tex. LEXIS 14 at * 4. The court shall read "all parts of the contract together to ascertain the agreement of the parties." *Id.* A court should interpret a contract so that each provision of the contract is given effect. *Id.*

The war risk endorsement to the policy between National Union as insurer and Care Flight as insured stated that "notwithstanding anything in the policy to the contrary ... [there is coverage for] confiscation ... by any Government." (III R. 31). The war risk endorsement continues: "Nothing herein contained shall vary, alter, waive or extend any of the terms, provisions, representations, conditions or agreements of the policy other than as above stated." (*Id.*)[2]

The policy also contained a breach of warranty endorsement, which named GECC, as the lienholder, a beneficiary. The breach of warranty clause, like a mortgage clause, provided that the lienholder's insurance will not be invalidated by any negligent or

_____

[2]The breach of warranty endorsement contained this same phrase. (III R. 35).

13

intentional actions taken by the named insured. *Don Chapman Motor Sales, Inc. v. National Savings Insurance, Co.,* 626 S.W.2d 592, 597 (Tex.App.—Austin 1981, writ ref'd n.r.e.). Under Texas law, the breach of warranty endorsement constituted a separate and independent contract between National Union, as the insurer, and GECC, as the lienholder. *St. Paul Fire & Marine Insurance Co. v. Crutchfield,* 350 S.W.2d 534, 537 (Tex.1961); *Don Chapman,* 626 S.W.2d at 597. The parties to this suit do not dispute that the coverage created in the basic policy was part of the contract created by the breach of warranty endorsement.[3]

The breach of warranty endorsement excluded from coverage losses resulting from "conversion, embezzlement or secretion by or at the direction of the Named Insured." (III R. 35). Appellants argue that the "confiscation" language in the war risk endorsement explicitly covered the losses in this case, and that the "notwithstanding anything in the policy to the contrary" language overrides the "conversion" exception in the breach of warranty endorsement. This ignores the last sentence of the war risk endorsement, which states that nothing in the endorsement shall "vary, alter, waive or extend" the terms of the policy except as stated in the endorsement. (III R. 31). Both the basic policy and the breach of warranty endorsement excluded losses following a conversion. The extension of coverage for "confiscation" under the

---

[3]The parties do dispute whether the territorial exclusions contained in the basic policy limit the coverage contained in the breach of warranty endorsement. However, our disposition of this case makes it unnecessary to reach this question.

war risk endorsement is not "contrary" to the policy exclusion for conversion. Confiscation and conversion are not identical and coverage for one can coexist in a policy containing an exclusion for the other.

The result appellants seek would make the conversion exclusion to the breach of warranty endorsement meaningless. The conversion here occurred when Care Flight subleased the aircraft. Coverage under the breach of warranty endorsement terminated at that time. The later confiscation by the Colombian government did not resurrect coverage. Once Care Flight converted the aircraft, potential insurance coverage for a subsequent event became irrelevant. *See, e.g., Fidelity & Cas. Co. of New York v. Central Bank of Houston,* 672 S.W.2d 641 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

For the above reasons, we find that, as a matter of law, the insurance contract excluded GECC's recovery for losses incurred due to Care Flight's conversion of the aircraft.

V. Attorney's Fees

Texas law provides for the award of attorney's fees under Tex.Civ.Prac. & Rem.Code § 37.009 (West 1986), which provides that "[i]n any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." The award of attorney's fees in a declaratory judgment action "lies within the discretion of the trial court, and its judgment will not be reversed on appeal absent a clear showing that it abused that discretion." *Oake v. Collin County,* 692 S.W.2d 454,

15

455 (Tex.1985) (citations omitted).

National Union contends that the district court erred by refusing to award attorney's fees that National Union incurred in defending a separate lawsuit in the Eastern District of Texas concerning the same issues. The district court judge ruled that National Union was only entitled to attorney's fees incurred in the case in that judge's court. Section 37.009 allows the discretionary award of fees incurred "in any proceedings under this chapter." National Union has not cited, and this court has not found, a case awarding a litigant fees incurred in a separate but related case. There is no basis to find that the district court abused its discretion in denying National Union's claim for attorney's fees incurred in the Eastern District of Texas litigation.

The summary judgment is AFFIRMED.