# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 17, 2007**

Charles R. Fulbruge III
Clerk

No. 05-20493

CEDYCO CORP

Plaintiff-Appellee-Cross-Appellant

v.

PETROQUEST ENERGY LLC

Defendant-Appellant-Cross-Appellee

consolidated with
No. 05-20891

CEDYCO CORP

Plaintiff-Appellee

v.

PETROQUEST ENERGY LLC; ET AL

Defendants

PETROQUEST ENERGY LLC

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before GARWOOD, BARKSDALE, and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

In this diversity case, PetroQuest Energy, LLP ("PetroQuest") appeals the district court's grant of summary judgment and award of damages in favor of Cedyco Corporation ("Cedyco") on Cedyco's claim that PetroQuest breached a contract to sell its working interest in two oil wells. Cedyco cross-appeals the award of money damages and argues that it is entitled to specific performance.

I

PetroQuest is a company engaged in oil and gas exploration and production. In November 2001, PetroQuest offered its working interest in two Louisiana oil wells for sale by auction at the Oil & Gas Asset Clearinghouse ("Clearinghouse") in Houston, Texas. The wells were auctioned as "Lot 26." Prior to the auction, PetroQuest distributed a "Property Data Sheet" to potential buyers. This document contained a provision stating that Lot 26 is "subject to a consent to assign." This is because the mineral deed identified as Lot 26 was originally leased in 1945 to ExxonMobil Corporation ("Exxon"), then subleased to PetroQuest in 1991 under the condition that PetroQuest not sell or assign the mineral rights without first obtaining Exxon's written consent.

Cedyco was the only bidder for Lot 26 and won the auction with a bid-offer of $1,000. PetroQuest then asked Exxon for consent to assign Lot 26 to Cedyco, and Exxon replied that it would grant only a conditional consent, subject to PetroQuest's remaining obligated for the original sublease and agreeing to indemnify Exxon for any liability arising from Cedyco's operation of the lease. PetroQuest proceeded to investigate Cedyco's credit and regulatory compliance histories and found that Cedyco had a record of violating state regulations imposed on oil and gas producers. As a result, PetroQuest declined to accept Exxon's conditional consent to assign because Cedyco presented too high of a risk for PetroQuest to agree to indemnify Exxon. PetroQuest then notified Clearinghouse that it could not sell Lot 26 to Cedyco because Exxon had given "an unacceptable 'conditional' consent to the assignment." Within three weeks

of the auction, Clearinghouse informed Cedyco that Exxon had not consented and refunded Cedyco's bid money and auction fees. Almost two years later, PetroQuest sold Lot 26 for $125,000.

Cedyco sued PetroQuest in Texas state court for breach of contract, specific performance, and conversion. PetroQuest removed the case to federal court pursuant to diversity jurisdiction, and both parties filed cross-motions for summary judgment on the breach of contract issue. Applying Texas law, the district court granted summary judgment in favor of Cedyco. Its reasons were brief: "The sale at the auction was final. Title to Lot 26 passed to Cedyco." After a bench trial to determine damages, the district court denied Cedyco's claim for specific performance and awarded Cedyco $290,205 in damages and $37,250 in attorney's fees. The parties cross-appealed.

II

We review a district court judgment on cross-motions for summary judgment de novo. White Buffalo Ventures, LLC v. Univ. of Texas, 420 F.3d 366, 370 (5th Cir. 2005). Evidence and inferences are taken in the light most favorable to the nonmoving party. Id. We affirm only if there is no genuine issue of material fact and one party is entitled to prevail as a matter of law. Shaw Constructors v. ICF Kaiser Engineers, Inc., 395 F.3d 533, 539 (5th Cir. 2004); see also FED. R. CIV. P. 56. We apply Texas substantive law to this diversity jurisdiction case because the parties so stipulated before the district court.

III

PetroQuest first argues that summary judgment was improper because it never accepted Cedyco's offer to buy Lot 26, and, as a result, a contract was never formed. Because Lot 26 was auctioned "with reserve," PetroQuest argues that it reserved the discretionary right to reject Cedyco's bid-offer.

3

Although we agree with PetroQuest that Lot 26 was auctioned "with reserve" because none of the auction documents stated otherwise, see TEX. BUS. & COMM. CODE ANN. § 2.328(c), we still find that a contract was formed. In a "with reserve" auction "the auctioneer may withdraw the goods at any time until he announces completion of the sale." TEX. BUS. & COMM. CODE § 2.328(c).[1] Thus, the "with reserve" designation does not allow a seller to reject a bid-offer after the auction closes and a winner is announced. Rather, the right to withdraw items in a "with reserve" auction ends once the auctioneer announces completion of the sale. Id. Therefore, PetroQuest accepted Cedyco's bid-offer at the moment Cedyco was announced the winner of the action—otherwise known as the "fall of the hammer." See id. § 2.328(b); see also Moss v. Hudson & Marshall, Inc., 599 S.E.2d 279, 281 (Ga. Ct. App. 2004) ("Generally, even if an auction is with reserve . . . , the seller must exercise his right to withdraw the property from sale before the auctioneer accepts the high bid by letting his hammer fall; immediately after the hammer falls, an irrevocable contract is formed . . . ."). A contract was formed as a matter of law.

Nevertheless, we agree with PetroQuest's alternative argument that the contract contained a condition precedent that Exxon consent to the assignment. A condition precedent is an act or event that must take place before performance of a contractual obligation is due. Hohenberg Brothers Co. v. George E. Gibbons & Co., 537 S.W.2d 1, 3 (Tex. 1976); see also Texas Dept. of Housing and Community Affairs v. Verex Assurance, Inc., 68 F.3d 922, 928 (5th Cir. 1995). While Texas does not generally favor reading conditions precedent into contracts, see Sirtex Oil Indus. v. Erigan, 403 S.W.2d 784, 787 (Tex. 1966), the inclusion of words "such as 'if,' 'provided,' 'on condition that,' or some similar phrase of conditional language" indicate that the parties intended there to be a

---

[1] This is distinct from a "without reserve" auction where the seller may not withdraw his items once he offers them for auction. TEX. BUS. & COMM. CODE § 2.328(c).

condition precedent. Criswell v. European Crossroads Shopping Center, Ltd., 792 S.W.2d 945, 948 (Tex. 1990).

Here, the auction documents contain the requisite conditional language indicating that Exxon's consent was a condition precedent to the sale. The "Property Data Sheet" informed all potential buyers that Lot 26 was "subject to a[] consent to assign." "Subject to" means "likely to be conditioned, affected, or modified in some indicated way[, and] having a contingent relation to something and usually dependent on such relation for final form, validity or significance." WEBSTER'S UNABRIDGED DICTIONARY 2275 (3d ed. 1993). Thus, the language of the auction documents expressly indicates that the sale of Lot 26 was conditioned on Exxon's consent. See Criswell, 792 S.W.2d at 948; see also Verex, 68 F.3d at 930 ("Although these phrases do not mirror those specifically listed in Criswell, we believe they do constitute the type of conditional language the Texas Supreme Court would find sufficient to create a condition precedent."). Moreover, the other auction documents reinforced that the sale was conditioned on Exxon's consent. See Citizens Nat'l Bank v. Texas & P. Ry., 150 S.W.2d 1003, 1006 (Tex. 1941) (determining the existence of a condition precedent by examining the contract as a whole). PetroQuest included the language "consent to assign required" in the "Property Data Package Update," in a handwritten cover page to the "Property Data Package Update," in the "due diligence inquiries" section of the Property Data sheet that was physically posted at the auction, and in large bold letters on a sign at the auction. Cedyco acknowledged and agreed to all disclosed conditions when it signed the "Bidder/Buyer's Terms and Conditions."

Cedyco's arguments that the auction documents did not contain a condition precedent are entirely without merit. For one, its assertions are belied

by the plain language of the auction documents.[2] Furthermore, Cedyco's argument that a condition precedent is an event that must occur before a contract is formed—and because a contract was formed at the close of the auction, there no longer existed a condition precedent—is circular and finds no support in Texas contract law. A condition precedent may be "those acts or events, which occur subsequently to the making of the contract, that must occur before there is a right to immediate performance and before there is a contractual duty." Gulf Construction Co. v. Self, 676 S.W.2d 624, 627 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.); Hohenberg, 537 S.W.2d at 3 (conditions precedent may "relate either to the formation of contracts or to liability under them").[3] Here, Exxon entertained a request for consent after knowing the identify of the buyer from the auction; thus, the condition precedent was to occur after the contract was formed but before PetroQuest's obligation to sell Lot 26 came due.

Because we find that the contract for the sale of Lot 26 contained a condition precedent, the critical question is whether the condition precedent was met—i.e., whether Exxon consented to the assignment. See Verex, 68 F.3d at 928. PetroQuest argues that Exxon did not consent; Exxon only conditionally consented. Cedyco responds that PetroQuest was obligated under the contract to obtain consent by accepting Exxon's conditions. In other words, neither party

---

[2] Cedyco's argument that Exxon's consent to assign was a "limitation" and not a "condition" is simply an attempt at semantic gymnastics with Cedyco unable to explain either the legal difference in terms or why the instant contract contains the new legal term it invented.

[3] Confusion in terminology is somewhat common. See Rincones v. Windberg, 705 S.W.2d 846, 848 (Tex. App.—Austin 1986, no writ) (noting that Texas cases often "lump these two definitions together as two types of conditions precedent, and do not distinguish conditions precedent from conditions subsequent"). For this reason, perhaps the best approach is taken by the Restatement Second of Contracts, which employs only the general term "condition." See RESTATEMENT (SECOND) OF CONTRACTS § 224 ("A condition is an event, not certain to occur, which must occur . . . before performance under a contract becomes due.").

argues that the term "consent" is ambiguous; rather, the parties disagree over the legal meaning of the term.[4]

Determining whether a contract is unambiguous and interpreting an unambiguous contract are questions of law. Heritage Resources, Inc. v. Nations Bank, 939 S.W.2d 118, 121 (Tex. 1996). "We give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." Id. "Consent" is normally understood to mean "to accept a proposition" or "capable, deliberate, and voluntary agreement to." WEBSTER'S, at 482. There is nothing in the contract indicating that "consent" meant anything more than its ordinary definition. Thus, Exxon did not "accept" or "voluntarily agree to" the assignment as contemplated by the contract. Instead, it responded with its own set of conditions. Nothing in the contract mandated or even suggested that PetroQuest must accept Exxon's conditions in order to obtain consent. To hold otherwise would force PetroQuest to accept whatever limited consent Exxon gives.

Were we to interpret the contract as imposing on PetroQuest the duty to obtain consent by accepting all of Exxon's terms, then the contract's condition precedent would be superfluous, that is there would be no need include a "consent to assign" provision in the contract at all as PetroQuest would be required to obtain consent under any circumstances. We decline to adopt such a construction, as we must ensure that each provision of the contract is given effect and none are rendered meaningless. See Int'l Turbine Serv., Inc. v. VASP

---

[4] Both parties conceded at oral argument that the summary judgment record contains no extrinsic evidence that would render ambiguous the meaning of "consent."

Brazilian Airlines, 278 F.3d 494, 497 (5th Cir. 2002); see also Kona Tech. Corp. v. S. Pac. Trans. Co., 225 F.3d 595, 610 (5th Cir. 2000)).[5]

The summary judgment record contains evidence only that Exxon consented to the assignment under the condition that PetroQuest comply with Exxon's terms. Because PetroQuest was not obligated by the contract to accept Exxon's terms, Exxon's response was not a "consent" under the terms of the contract, and the condition precedent was never satisfied. As a result, PetroQuest's obligation to perform under the contract never came due. We therefore vacate summary judgment, and reverse and render judgment in favor of PetroQuest. See Vela v. City of Houston, 276 F.3d 659, 671 (5th Cir. 2001) ("In situations involving cross-motions for summary judgment and upon finding no genuine issues of material fact, this court regularly reverses grants of summary judgment and enters judgment for the opposite party."). We do not reach PetroQuest's remaining argument, nor address additional questions concerning damages.

IV

For the foregoing reasons, we VACATE the district court's grant of summary judgment for Cedyco, and REVERSE and RENDER judgment in favor of PetroQuest that Cedyco take nothing.

---

[5] We observe that Cedyco does not contend—and it is not apparent—that Exxon's condition imposed on PetroQuest only that potential liability to Exxon which PetroQuest would have anyway if Exxon had consented to the assignment without condition or if the original sublease between Exxon and PetroQuest had not contained any express provision requiring Exxon's consent.