# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-20086

United States Court of Appeals
Fifth Circuit

**FILED**
December 22, 2016

Lyle W. Cayce
Clerk

WBCMT 2007 C33 OFFICE 9720, L.L.C.,

　　　　Plaintiff - Appellant

v.

NNN REALTY ADVISORS, INCORPORATED,

　　　　Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, DENNIS, and PRADO, Circuit Judges.

EDITH H. JONES, Circuit Judge:

NNN Realty Advisors, Inc. (NNN Realty), defendant-appellee here, persuaded the district court that its guaranty of financing for a commercial project in Houston, Texas, was not activated despite a "part [of the Property] becoming an asset in . . . a voluntary bankruptcy or insolvency proceeding of Borrower[.]"  Interpreting a complex set of financing documents, the district court held after trial that the term "Borrower" in the guaranty refers collectively to all of the numerous borrowing entities, not to each of them individually.  The current noteholder, plaintiff-appellant WBCMT 2007 C33 OFFICE 9720, L.L.C. (WBCMT) challenges the adverse judgment in its breach-of-contract suit to recover on the guaranty.  We **REVERSE** and **RENDER** judgment for WBCMT.

No. 15-20086

**I.**

In June 2007, Wachovia Bank loaned $17.5 million to various borrowing entities formed by investors for the sole purpose of owning tenant-in-common interests in a Houston, Texas, office building complex (the Property).  Each borrowing entity is jointly and severally liable for all loan obligations.  The promissory note is secured in part by two agreements:  (1) a Deed of Trust, Security Agreement, and Fixture Filing, which encumbers the Property (the Security Instrument); and (2) an Indemnity and Guaranty Agreement (the Guaranty) executed by NNN Realty as Guarantor.   Through various assignments, WBCMT acquired Wachovia Bank's interests in the loan.

The Guaranty references the individual borrowing entities as follows:

WHEREAS, NNN Cypresswood Drive, LLC, NNN Cypresswood Drive 1, LLC, NNN Cypresswood Drive 3, LLC, NNN Cypresswood Drive 4, LLC, NNN Cypresswood Drive 5, LLC, NNN Cypresswood Drive 6, LLC, NNN Cypresswood Drive 7, LLC, NNN Cypresswood Drive 9, LLC, NNN Cypresswood Drive 10, LLC, NNN Cypresswood Drive 11, LLC, NNN Cypresswood Drive 12, LLC, NNN Cypresswood Drive 13, LLC, NNN Cypresswood Drive 14, LLC, NNN Cypresswood Drive 17, LLC, NNN Cypresswood Drive 18, LLC, NNN Cypresswood Drive 19, LLC, and NNN Cypresswood Drive 20, LLC, each a Delaware limited liability company (as defined in the Security Instrument), the "***Borrower***"), have obtained a loan (the "***Loan***") in the principal amount of Seventeen Million Five Hundred Thousand and No/100 Dollars ($17,500,000.00) from [Wachovia Bank.]

Notably, this recital contains a typographical error—a missing or extra parenthesis in the phrase "(as defined in the Security Instrument), the '***Borrower***')."

The contracting parties agreed that additional parties could obtain tenant-in-common interests in the Property and become part of "Borrower" under the loan documents.  Section 2.9 of the Security Instrument governs the transfer of interests.  And the Guaranty states that, upon a valid transfer

2

under section 2.9, "the Co-Owner Transferee [the additional party that obtained an interest] shall be included in the defined term '***Borrower***' hereunder[.]"

Pursuant to these provisions, various "NNN Cypresswood Drive" entities acquired tenant-in-common interests in the Property and were included in the term "Borrower." NNN Cypresswood Drive 25, LLC became one such entity when it obtained a 3.305% interest in the Property and assumed the loan obligations.

A few years later, the borrowing entities were notified that they were in default. Shortly thereafter, NNN Cypresswood Drive 25, LLC filed a voluntary Chapter 11 bankruptcy petition and listed its 3.305% tenant-in-common interest as an asset in the bankruptcy case. It is undisputed that "the Property or any part thereof" thus became an asset in the voluntary bankruptcy case. The lender then notified NNN Realty that it was "fully liable for all principal, interest and other amounts which are due and owed." This claim was based on the penultimate paragraph of section 1 of the Guaranty, which provides in relevant part:

> [NNN Realty] shall be fully liable for all principal, interest and other amounts which may be due and owing by Borrower under the Note, the Security Instrument and any other Loan Document from and after . . . the Property or any part thereof becoming [sic] an asset in (x) a voluntary bankruptcy or insolvency proceeding of Borrower[.]

In the meantime, as the default remained uncured, WBCMT foreclosed on and purchased the 96.695% interest in the Property owned by the non-bankrupt borrowing entities for $6,925,000. WBCMT then obtained a lift-stay order from the bankruptcy court and purchased NNN Cypresswood Drive 25, LLC's 3.305% interest at foreclosure for $305,184. WBCMT now owns 100% of the Property, and the remaining deficiency at the date of foreclosures was $14,605,545.06, plus expenses.

No. 15-20086

On August 29, 2013, WBCMT sued NNN Realty, *inter alia*, for breach of the Guaranty. WBCMT alleged that NNN Realty's liability to pay arose when NNN Cypresswood Drive 25, LLC's 3.305% interest in the Property became an asset in the investor's bankruptcy. A week later, WBCMT moved for summary judgment.

NNN Realty responded that there was a material issue of fact as to whether a liability-triggering event had occurred. Specifically, NNN Realty asserted that "Borrower" is "a term defined in the Guaranty to be the collective group of borrowers, not a single borrower," because the word "and" connects all of the borrowing entities listed in the Guaranty's recital. Thus, according to NNN Realty, when the Guaranty refers to "a voluntary bankruptcy . . . proceeding of Borrower," its plain terms mean "a bankruptcy proceeding filed by all of the borrowers" collectively, not a single borrower. Consequently, the Guaranty had not been triggered.

WBCMT pointed out that the phrase "as defined in the Security Instrument" appears before "Borrower" in the Guaranty's recital, and the Security Instrument defines the borrowing entities "individually or collectively" as "Borrower." After the district court concluded, contrary to both parties' contentions, that the Guaranty's definition of "Borrower" was ambiguous, the case proceeded to a bench trial, in which the sole witness was Greg Kaliman, who represented WBCMT in seeking to enforce the Guaranty. Kaliman generally testified that interpreting "Borrower" to mean all borrowing entities collectively would make the loan almost impossible to enforce, and that no lender would make such a loan.

Without relying on the testimony at trial, the district court rendered judgment for NNN Realty. The court emphasized that the use of the word "and" to connect the names of the borrowing entities "indicates that the term 'Borrower' refers to the full complement of entities." The court rejected as

4

ambiguous the parenthetical reference to the Security Instrument in the Guaranty's recital "because it is unclear to what the parenthetical refers." Other than observing that the parenthetical appears grammatically to relate to "Delaware limited liability company," a term not defined in the Security Instrument, the court expressed no other possible object of the Security Instrument reference. In any event, the court concluded that the "Guaranty, construed strictly and in favor of the Guarantor, defines 'Borrower' as *all* listed NNN Cypresswood Drive entities. As a result, NNN's liability under the Guaranty did not arise upon the bankruptcy filing by one entity[.]"

WBCMT has appealed, asserting that in the Guaranty, "Borrower" unambiguously refers to the borrowing entities either collectively or individually.

## II.

### A. Standard of Review

Under Texas law, which, according to the loan documents, governs the transaction, the interpretation of an unambiguous contract, including the determination whether the contract is ambiguous, is a legal question reviewed *de novo. E.g., Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.,* 331 F.3d 452, 456 (5th Cir. 2003). If the contract is ambiguous, then "the district court's findings of fact as to the intent of the parties are reviewed for clear error." *McLane Foodservice, Inc. v. Table Rock Rests., L.L.C.,* 736 F.3d 375, 377 (5th Cir. 2013). Although the court conducted a bench trial, none of the court's dispositive findings depended on the testimony of WBCMT's witness or on extrinsic evidence concerning the transaction.

### B. Analysis

"The primary concern of contract interpretation under Texas law is to ascertain the true intentions of the parties as expressed in the instrument." *Weeks Marine, Inc. v. Standard Concrete Prods., Inc.,* 737 F.3d 365, 369 (5th

Cir. 2013).  Texas courts thus "examine the entire contract in an effort to harmonize and give effect to all provisions so that none is rendered meaningless."  *Id.*  A contract is unambiguous if it can be given "a definite or certain legal meaning."  *McLane Foodservice, Inc.*, 736 F.3d at 378.  Ambiguity does not arise simply because of a lack of clarity, or because the parties proffer different interpretations of the contract.  *Id.*  Instead, a contract is ambiguous "only if it is subject to two or more reasonable interpretations after applying the pertinent canons of construction."  *Id.*; *cf. Kern v. Sitel Corp.*, 517 F.3d 306, 309 (5th Cir. 2008) ("A contract, however, is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning." (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983))).  Moreover, where the interpretation of a guaranty is in dispute, the guarantor "is entitled to have his agreement strictly construed," and "[w]here uncertainty exists as to the meaning of a contract of guaranty, its terms should be given a construction which is most favorable to the guarantor."  *Coker*, 650 S.W.2d at 394 n.1.

Guided by these principles, we analyze the Guaranty in three parts.  First, we consider NNN Realty's argument that the word "and," which connects the names of the borrowing entities in the recital, necessarily defines "Borrower" as a collective entity.  Second, we address WBCMT's argument that the phrase "as defined in the Security Instrument" modifies "Borrower" in the Guaranty's recital and thereby incorporates the Security Instrument's alternative definition of "Borrower" as a collective or individual entities depending on the context.  Finally, we examine how the term "Borrower" is used throughout the Guaranty.  This analysis reveals that numerous provisions of the Guaranty only make sense when "Borrower" refers to each borrowing entity individually.  From a holistic standpoint of interpretation,

No. 15-20086

"Borrower" refers, as WBCMT contends, to each borrowing entity individually or collectively.

### 1. The Relevance of "And"

NNN Realty bases its entire argument in this case on the word "and" in the definition of "Borrower." In relevant part, the Guaranty's recital states:

> WHEREAS, NNN Cypresswood Drive, LLC, NNN Cypresswood Drive 1, LLC, NNN Cypresswood Drive 3, LLC, NNN Cypresswood Drive 4, LLC, NNN Cypresswood Drive 5, LLC, NNN Cypresswood Drive 6, LLC, NNN Cypresswood Drive 7, LLC, NNN Cypresswood Drive 9, LLC, NNN Cypresswood Drive 10, LLC, NNN Cypresswood Drive 11, LLC, NNN Cypresswood Drive 12, LLC, NNN Cypresswood Drive 13, LLC, NNN Cypresswood Drive 14, LLC, NNN Cypresswood Drive 17, LLC, NNN Cypresswood Drive 18, LLC, NNN Cypresswood Drive 19, LLC, and NNN Cypresswood Drive 20, LLC, each a Delaware limited liability company (as defined in the Security Instrument), the "***Borrower***"), have obtained a loan (the "***Loan***") in the principal amount of Seventeen Million Five Hundred Thousand and No/100 Dollars ($17,500,000.00) from [Wachovia Bank.]

As was noted above, the district court found that the word "and" is dispositive. The court stated that "[t]he first sixteen entities are connected with the final listed entity only by the word 'and'—not 'and/or.'" Therefore, the court reasoned, "[t]he parties' use of the conjunctive indicates that the term 'Borrower' refers to the full complement of entities." NNN Realty echoes the district court.[1]

---

[1] It bears noting that NNN Realty's position, that it only agreed to be liable when all borrowing entities act collectively, misstates the nature of the investors' deal. NNN Realty had to be aware of the borrowing entities' tenant-in-common agreement, which expressly provides that the investor entities "do not intend by this Agreement or otherwise to create a partnership or joint venture among themselves." **ROA.370.** Indeed, NNN Realty's own brief refers to the borrowing entities as "individual" and "separate" entities. **Red Br. at 4–5.** Despite numerous provisions throughout the investment transaction documents, which we need not recite here, that bind the investors either as individual entities or collectively, as the context may require, NNN Realty maintains that its Guaranty obligation exists only for events in which the borrowing entities act as one collective.

No. 15-20086

That reasoning places more weight on the word "and" than it can bear. Specifically, it overlooks that the definition of "Borrower" occurs in a sentence in the recital: "[16 entities 'and' a 17th entity], each a Delaware limited liability company (as defined in the Security Instrument), the '***Borrower***'), have obtained a loan (the '***Loan***')[.]"  The suggestion that the parties should have used the words "and/or" instead of "and" makes no sense in the context of the sentence: either all 17 entities obtained a loan or they did not.  That is, the recital states a fact—each of the 17 entities is a party to the loan.  There would be no reason for the parties to write that "16 entities and/or a 17th entity have obtained a loan," when in fact all 17 entities obtained the loan.  The centerpiece of the district court's and NNN Realty's reasoning, therefore, is unsound and not dispositive.

**2. What "as Defined in the Security Instrument" Modifies**

Having eliminated NNN Realty's sole argument for why "Borrower" must refer to the collective body of borrowing entities, we consider next WBCMT's argument to the contrary.  In light of the extraneous or missing parenthesis in the Guaranty's recital, WBCMT invokes the well-established rule that "[t]he words, not the punctuation, are the controlling guide in construing a contract."  *Anderson & Kerr Drilling Co. v. Bruhlmeyer*, 136 S.W.2d 800, 803 (Tex. 1940).  "If the meaning of the words is clear[,] the court will interpret a contract according to their meaning and without regard to the punctuation marks or the want of them."  *Id.*  Applying this rule, WBCMT contends that the Guaranty clearly incorporates the Security Instrument's definition of "Borrower," which speaks in terms of the borrowing entities "individually or collectively as the context may require."  A comparison of the two definitions (with emphases added) appears below:

No. 15-20086

| Guaranty | Security Instrument |
|---|---|
| WHEREAS, NNN Cypresswood Drive, LLC, NNN Cypresswood Drive 1, LLC, NNN Cypresswood Drive 3, LLC, NNN Cypresswood Drive 4, LLC, NNN Cypresswood Drive 5, LLC, NNN Cypresswood Drive 6, LLC, NNN Cypresswood Drive 7, LLC, NNN Cypresswood Drive 9, LLC, NNN Cypresswood Drive 10, LLC, NNN Cypresswood Drive 11, LLC, NNN Cypresswood Drive 12, LLC, NNN Cypresswood Drive 13, LLC, NNN Cypresswood Drive 14, LLC, NNN Cypresswood Drive 17, LLC, NNN Cypresswood Drive 18, LLC, NNN Cypresswood Drive 19, LLC, and NNN Cypresswood Drive 20, LLC, each a Delaware limited liability company **(as defined in the Security Instrument), the "*Borrower*")**, have obtained a loan (the "*Loan*") in the principal amount of Seventeen Million Five Hundred Thousand and No/100 Dollars ($17,500,000.00) from [Wachovia Bank.] | **THIS DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING** (as the same may from time to time be amended, consolidated, renewed or replaced, this "*Deed of Trust*") is made as of June 20, 2007, by NNN CYPRESSWOOD DRIVE, LLC, a Delaware limited liability company ("*Initial Borrower*") and by NNN CYPRESSWOOD DRIVE 1, LLC, NNN CYPRESSWOOD DRIVE 3, LLC, NNN CYPRESSWOOD DRIVE 4, LLC, NNN CYPRESSWOOD DRIVE 5, LLC, NNN CYPRESSWOOD DRIVE 6, LLC, NNN CYPRESSWOOD DRIVE 7, LLC, NNN CYPRESSWOOD DRIVE 9, LLC, NNN CYPRESSWOOD DRIVE 10, LLC, NNN CYPRESSWOOD DRIVE 11, LLC, NNN CYPRESSWOOD DRIVE 12, LLC, NNN CYPRESSWOOD DRIVE 13, LLC, NNN CYPRESSWOOD DRIVE 14, LLC, NNN CYPRESSWOOD DRIVE 17, LLC, NNN CYPRESSWOOD DRIVE 18, LLC, NNN CYPRESSWOOD DRIVE 19, LLC, NNN CYPRESSWOOD DRIVE 20, LLC, each a Delaware limited liability company (collectively, together with Initial Borrower and each Co-Owner Transferee (as hereinafter defined) acquiring an interest in the Property (as hereinafter defined) in accordance with the terms hereof, **individually or collectively as the context may require, "*Borrower*")**[.] … <br><br> 6.36 <u>Borrower References</u>. Wherever the defined term "*Borrower*" is used throughout this Deed of Trust, **such term shall be read to include each entity comprising Borrower** and the representation, covenant, condition, requirement or provision relating thereto shall be applicable to each entity comprising Borrower. |

9

WBCMT urges that, read plainly, the Guaranty's parenthetical "as defined in the Security Instrument" incorporates the Security Instrument's definition, which describes the borrowing entities "individually or collectively" as "Borrower."

We agree with WBCMT. The recital supplies only three possible objects of the clause "as defined in the Security Instrument": (1) the list of borrowing entities; (2) "Delaware limited liability company"; or (3) "Borrower." As the district court correctly noted, the second option is ruled out because "Delaware limited liability company" is not "defined" in the Security Instrument. Both the first and third options, however, can reasonably be read in light of the Security Instrument's definition of "Borrower." That is, the Security Instrument twice defines "Borrower" as the borrowing entities "individually or collectively as the context may require," and it applies every covenant, condition and requirement of the Security Instrument to both the collective and the individual entities. The district court's interpretation of the clause rendered it meaningless and overemphasized the importance of the misplaced or superfluous parenthesis. WBCMT's interpretation better fulfills the requirements of Texas law, as it gives effect to the clause and looks at the words where punctuation is uncertain. We conclude that the Guaranty incorporates the Security Instrument's definition of "Borrower," which unambiguously includes each borrowing entity individually as well as collectively.

### 3. The Guaranty's Context

This reading of the Guaranty's recital is reinforced by a survey of the Guaranty's provisions, many of which would be rendered meaningless by NNN Realty's theory that "Borrower" refers exclusively to all borrowing entities collectively. Our task is to "examine the entire contract in an effort to harmonize and give effect to all provisions so that none is rendered meaningless." *Weeks Marine, Inc.*, 737 F.3d at 369; *Coker*, 650 S.W.2d at 393.

No. 15-20086

*See also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167, 174 (2012) (stating that "[t]he text must be construed as a whole," and "[i]f possible, every word and every provision is to be given effect"). So considered, various provisions of the Guaranty indicate that "Borrower" must refer to the borrowing entities individually or collectively.

To begin, the phrase "Borrower or any other person" and slight variations thereof appear 15 times in the Guaranty. A "person" is defined as "a human being," or in the artificial sense, "[a]n entity, such as a corporation, created by law and given certain legal rights and duties of a human being." *Person*, *Black's Law Dictionary* (10th ed. 2014). This repeated phrase in the Guaranty thus translates to "Borrower or any other [human being or entity]." But in order for there to be any *other* human being or entity, there must first be *a* human being or entity. That is, the "Borrower" must itself be a human being or entity. In this transaction, by its own terms, the borrowing entities taken together are not an artificial legal "person." NNN Realty acknowledges this fact: they are "a number of *individual* investors that each formed *separate* limited liability companies" (emphasis added). Although each borrowing entity is an autonomous owner of a tenant-in-common interest, they do not comprise a single entity. Thus, if we adopted NNN Realty's interpretation of "Borrower" as all borrowing entities collectively, it would effectively render nonsensical the phrase "Borrower or any other person" because the collective "Borrower" in the structure of this transaction is not a "person."

A second example arises with regard to the Guaranty's use of entity-specific language. For example, section 1 of the Guaranty defines the scope of NNN Realty's obligations to guarantee or indemnify the lender. Sections 1(f) and 1(h) refer to "Borrower or any of its principals, officers, general partners or members[.]" And the penultimate paragraph in section 1 refers to "Borrower . . . or any general partner, manager or managing member of Borrower[.]"

No. 15-20086

Terms like "principal," "officer," "general partner," and "member" are all entity-specific terms of art that relate to legal "persons." Yet, as explained above, it is undisputed that the individual investor entities in this transaction disclaimed the formation of any collective entity or "person." Accepting NNN Realty's interpretation of "Borrower" as only the borrowing entities collectively would thus render meaningless the Guaranty's expansive references to principals, officers, general partners or members. Applied to each investor individually, "as the context may require," however, the references make perfect sense and expand NNN Realty's obligations. At oral argument, NNN Realty dismissed the references to these terms as mere "boilerplate language." But courts are not entitled to disregard boilerplate language as such. Our task is to give effect "to *all* provisions," boilerplate or not. *Weeks Marine, Inc.*, 737 F.3d at 369 (emphasis added).

In regard to the scope of the indemnity, NNN Realty assumes responsibility in section 1(j) for "Costs" arising from "Borrower's failure to comply with the Securities Act (as defined in the Security Instrument) and all applicable state securities laws[.]" If "Borrower" means only the collective entities, then any individual entity investor's failure to comply with applicable securities laws in a transfer of its tenant-in-common interest in the Property is excluded from NNN Realty's guaranty. Put otherwise, NNN Realty would indemnify the Lender only in the nonsensical and unlikely event that *all* of the entities comprising Borrower were involved in securities law violations. Reading "Borrower" to include the entities individually and collectively accords with the transaction's legal structure.

Particularly relevant to this dispute is the language outlining NNN Realty's obligation as indemnitor to "be fully liable for all principal, interest and other amounts which may be due and owing by Borrower . . . after . . . (ii) the Property or any part thereof becom[es] an asset in (x) a voluntary

12

bankruptcy or insolvency proceeding of Borrower[.]"  WBCMT argues that if NNN Realty correctly defines Borrower as a collective entity, then filing "any part" of the Property as an asset in bankruptcy is rendered meaningless, because the only bankruptcy covered by the indemnity would be that of the collective Borrower for all of the Property.  On the other hand, if an individual borrowing entity is within the "Borrower" definition, and that entity sought bankruptcy relief, as happened here, then its tenant-in-common interest in "any part" of the Property became an asset of the estate. WBCMT's interpretation gives meaning to the entirety of the language in this provision. NNN Realty's only response is to dismiss "any part thereof" as "boilerplate," which, as already noted, this court may not do.

A further objection to limiting "Borrower" to the collective group of entities is a serious doubt whether they could, as a collective, file the "Property" in a bankruptcy case.   The Bankruptcy Code defines a "debtor" as a "person" "concerning which a case under this title has been commenced," and a "person" includes an "individual, partnership, and corporation[.]"  11 U.S.C. § 101(13), (41).  Only a "person" (that resides in the United States) may be a debtor under Title 11.  *Id.* § 109(a).  The Code permits neither a "property" nor, apparently, a group of individuals who happen to be tenants in common to be a "debtor" entitled to the protection of federal bankruptcy law.  That the individual investor entities could do so, however, is beyond dispute.  In this instance, interpreting "Borrower" to include a collective or individual entities is the only way to effectuate the provision.

Tension also arises between NNN Realty's definition of "Borrower" and the use of the term in the same provision just discussed, which also holds NNN Realty "fully liable" for the debt "from and after (i) a default by Borrower . . . of any of the covenants set forth in Section 2.9, Section 2.29, or Section 2.34 of the Security Instrument."   "Borrower" includes both the collective entities and

the entities individually under the Security Instrument.  These sections of the Security Instrument treat, respectively and generally speaking, transfers or alienations of interest in the Property (2.9), maintaining the status of a single purpose entity (2.29), and preserving intact the tenant in common agreement underlying the transaction (2.34).   In each section, it is clear that individual entities as "Borrowers" may commit a breach as well as the collective group.  If NNN Realty's narrower interpretation of "Borrower" prevails, then a serious question would arise whether "Borrower" in this provision is defined under the Security Instrument or the Guaranty.   Using the consistent definition indicated by the Guaranty recital's reference to the Security Instrument definition eliminates this problem.

Another example lies in section 6(c), in which NNN Realty purportedly waives "any right of subrogation, contribution, reimbursement or indemnity whatsoever or any right of recourse to or with respect to the assets or property of Borrower."   Under NNN Realty's interpretation, NNN Realty could nevertheless pursue against *any* individual borrowing entity (or even many of them) "any right of subrogation, contribution, reimbursement or indemnity whatsoever or any right of recourse to or with respect to the assets or property of" such entity to satisfy NNN Realty's indemnity obligations.  This result would follow even though NNN Realty waived such rights against the collective "Borrower."

In each of these examples, however, reading "Borrower" as referring to each borrowing entity individually or collectively, according to the context, solves obvious interpretive problems that arise from NNN Realty's narrower construction of the term.  Interpreting "Borrower" to incorporate the Security

No. 15-20086

Instrument's definition makes use of and makes sense of the Guaranty as a whole.[2]

For these reasons, NNN Realty's interpretation of "Borrower" as limited to all borrowing entities collectively creates various absurdities throughout the Guaranty—so much so that the interpretation cannot be considered a reasonable alternative interpretation of "Borrower."[3] The only reasonable, textually supportable interpretation of "Borrower" is that it refers to the collective entities or to each individual borrowing entity, as the context may require. "Borrower" is unambiguous as a matter of law in the Guaranty.

We **REVERSE** and **RENDER** judgment for WBCMT.

---

[2] On this note, the parties to the Security Instrument addressed the potential situation where there are inconsistencies between the Security Instrument and the Guaranty and prescribed that "the provisions of [the Security Instrument] shall control over the provisions of . . . the Indemnity and Guaranty Agreement[.]" This means that the Security Instrument's definition of "Borrower" should supersede any inconsistent definitions elsewhere in the loan documents. Of course, NNN Realty was not a party to the Security Instrument, but NNN Realty did agree in the Guaranty that the Guaranty and other loan documents (including the Security Instrument) "embod[ied] the final entire agreement among the parties hereto[.]" NNN Realty's endeavor here to devise inconsistent definitions of "Borrower" thus not only has no basis in the Guaranty's text, but it also attempts to walk back NNN Realty's assent to the Security Instrument's explicit guidance on how to resolve inconsistencies.

[3] NNN Realty's only other affirmative argument is that the Guaranty should be understood as "limited," "narrower in scope," and "not necessarily . . . as inclusive as the Security Instrument." But that argument fails to address the interpretational conundrums that NNN Realty's interpretation of "Borrower" would create in various provisions of the Guaranty referenced above. We find this argument unpersuasive.

15