# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20555

United States Court of Appeals
Fifth Circuit

**FILED**

October 18, 2018

Lyle W. Cayce
Clerk

DAVID M. SELLERS,

> Plaintiff - Appellant

v.

MINERALS TECHNOLOGIES, INCORPORATED; CETCO ENERGY
SERVICES COMPANY, L.L.C.,

> Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-2657

Before STEWART, Chief Judge, JONES, and ENGELHARDT, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant David Sellers ("Sellers") appeals in part the district court's dismissal of his breach of contract claim against Mineral Technologies, Inc. ("MTI") and CETCO Energy Services Company, L.L.C. ("CETCO" and collectively with MTI, "Defendants") on summary judgment. For the reasons stated herein, we reverse the district court's decision in part and remand to the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-20555

district court for a determination of the contractual amount due to Sellers and entry of judgment in favor of Sellers in such amount.

## INTRODUCTION

In January of 2010, Sellers was hired as CETCO's "Vice President of Business Development—Produced Water Equipment." The terms of his employment were set forth in an "Amended Executive Employment Agreement"[1] ("the Agreement"). The Agreement provided for a potential long-term incentive ("LTI") payment to Sellers of 5% of the net margin of sales made under his supervision.

In or around May 2014, MTI bought CETCO from its parent company, Amcol International. Following the purchase, MTI asked CETCO President Mike Johnson to downsize CETCO. According to Johnson, because Sellers had advised that he did not intend to extend his employment with CETCO beyond January 18, 2015—the end-date of the Agreement—Sellers was placed on a list of employees to let go. Sellers's employment was terminated thereafter. It is undisputed that his termination was without cause.

On September 9, 2015, Sellers filed this suit in the district court of Montgomery County, Texas, alleging that Defendants breached the Agreement by failing to pay him six months of COBRA[2] benefit premiums, commissions that he earned for 2014 and 2016, and $428,681.71 of LTI benefits due under the terms of the Agreement. Sellers also asserted that Defendants' failure to pay the sums allegedly due, combined with other actions, amounts to fraud or

---

[1] The amended version of Sellers's employment agreement with CETCO was executed approximately a year after he was hired. It did not change the terms of his original employment agreement in any significant respect but did change the name of the line of business supervised by Sellers from "Produced Water Equipment" to "New Build Capital Process Equipment."

[2] "COBRA," as used herein, refers to the Consolidated Omnibus Budget Reconciliation Act.

constructive fraud, breach of fiduciary duty, and conversion. Defendants subsequently removed the case to the United States District Court for the Southern District of Texas, Houston Division. Pursuant to an order of the district court requiring Defendants to pay Sellers the undisputed amounts owed to him, Defendants tendered to Sellers $30,112 for the remaining 2014 commissions due and $38,192 for the 2015 commissions due on January 7, 2016 and January 26, 2016 respectively.

On May 13, 2016, Defendants filed a motion for summary judgment seeking dismissal of all of Sellers's claims. Sellers's response included a "Counter-Motion for Partial Summary Judgment as to Liability." On August 3, 2017, the district court issued its "Opinion on Summary Judgment," in which it found that: 1) Sellers is not entitled to any LTI benefits since the pertinent terms of the Agreement contain an unambiguous, unmet condition precedent that Sellers be employed by CETCO on January 18, 2015 to receive such benefits; and 2) Sellers is not entitled to any COBRA benefit premiums since the Agreement expressly provides that CETCO would pay for such benefits for six months after termination only if he signed a release of all claims in a form acceptable to CETCO, which he did not do. Without specifically addressing any of Sellers's other claims, the opinion concludes by stating: "David M. Sellers will take nothing from Cetco Energy Services Company, LLC." On the same date, the district court also issued a judgment to this effect. Sellers appeals, addressing only the issue of denial of LTI benefits.[3]

---

[3] Because Sellers only briefs the issue of denial of LTI benefits, any arguments on his remaining claims are waived. *See* FED. R. APP. P. 28(a)(8) (requiring an appellant's brief to contain arguments that include the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); *United States v. Reagan*, 596 F.3d 251, 254 (5th Cir. 2010) (finding that the appellant's failure to brief an issue constituted waiver of same).

No. 17-20555

## STANDARD OF REVIEW

"We review a grant of summary judgment de novo, applying the same standard that the district court applied." *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016). Summary judgment is appropriate where there is "no genuine dispute as to any material fact" and "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 456 (5th Cir. 2003) (internal quotation marks and citation omitted). A dispute regarding a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation marks and citation omitted). The court must "view the evidence introduced and all factual inferences [therefrom] in the light most favorable to the party opposing summary judgment." *Smith*, 827 F.3d at 417 (internal quotation marks and citation omitted). A party opposing summary judgment may not, however, "rest on mere conclusory allegations or denials in its pleadings" to avoid an adverse ruling. *Id.* (internal quotation marks and citation omitted).

Additionally, under Texas law,[4] "the interpretation of [a] contract, including the determination of whether [its provisions are] ambiguous, is a legal question reviewed [de novo]." *WBCMT 2007 C33 OFFICE 9720, L.L.C. v. NNN Realty Advisors, Inc.*, 844 F.3d 473, 477 (5th Cir. 2016); *see also J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) ("Deciding whether a contract is ambiguous is a question of law for the court."). If a contract's

---

[4] There is no dispute in this case that Texas law governs interpretation of the Agreement. Moreover, this court has recognized that in a diversity case involving the interpretation of a contract, the substantive law of the forum state or the state agreed upon by the parties to the contract applies. *See McLane Foodservice, Inc. v. Table Rock Rests., L.L.C.*, 736 F.3d 375, 377 (5th Cir. 2013). Here, the parties specified Texas law as the governing law in the Agreement.

provisions are determined to be facially ambiguous, however, then the meaning of the contract, as determined through the intent of the parties, is a question of fact. *See Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 294 (5th Cir. 2010) ("[I]f [a] contract is subject to two or more reasonable interpretations . . . the contract is ambiguous, creating a fact issue on the parties' intent") (quoting *Webster*, 128 S.W.3d at 229)). Thus, as the Texas Supreme Court has recognized, summary judgment is generally inappropriate for claims concerning an ambiguous contract. *See Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983).

## DISCUSSION

### *General Rules of Contract Interpretation*

"The primary concern of contract interpretation under Texas law is to ascertain the true intentions of the parties as expressed in the instrument." *NNN Realty Advisors, Inc.*, 844 F.3d at 477-78 (internal quotation marks and citation omitted). Accordingly, Texas courts "examine the entire contract in an effort to harmonize and give effect to all provisions so that none is rendered meaningless." *Id.* at 478 (internal quotation marks and citation omitted). A contract is considered unambiguous "if it can be given a definite or certain legal meaning." *Id.* (internal quotation marks and citation omitted). Whether a contract is ambiguous must be determined by examining the document itself and without consideration of parol evidence.[5] *See Addicks Servs., Inc.*, 596

---

[5] Both parties reference exhibits submitted with their summary judgment pleadings to support assertions they make regarding the intent of the parties and formation of the Agreement. Sellers, for instance, points to affidavits of CETGO executives Morris Hoagland and Mike Johnson, who state that under their continuous understanding of the Agreement, Sellers is due the LTI benefits at issue. Defendants, on the other hand, give significant attention to excerpts from Sellers's deposition indicating that he primarily drafted the Agreement and discussing his understanding of its provisions. Such evidence is not properly before us for consideration, however, since we are called upon to determine as a matter of law whether or not the relevant contractual provisions are ambiguous—an endeavor which

F.2d at 294. Accordingly, differing interpretations offered by the parties are insufficient to render a contract ambiguous. *NNN Realty Advisors, Inc.*, 844 F.3d at 478. Rather, ambiguity arises where a contract's "meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning." *Kern v. Sitel Corp.*, 517 F.3d 306, 309 (5th Cir. 2008) (quoting *Coker*, 650 S.W.2d at 393).

Once a contract has been determined to be unambiguous, "the intent of the parties must be taken from the agreement itself, not from the parties' present interpretation, and the agreement must be enforced as written." *Addicks Servs.*, 596 F.3d at 294 (internal quotation marks and citation omitted); *see also Horn v. State Farm Lloyds*, 703 F.3d 735, 740 (5th Cir. 2012) (noting that "[u]nder Texas law, the parties' intent is governed by what they said, not by what they *intended* to say but did not") (quoting *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006)). If a contract is deemed ambiguous, however, then a court may consider parol evidence to determine the parties' intent. *McLane Foodservice, Inc. v. Table Rock Rests., L.L.C.*, 736 F.3d 375, 378 (5th Cir. 2013) (citing *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450-51 (Tex. 2008)).

### *Interpretation of the Contractual Provisions at Issue*

Sections 3(c), "Long[-]Term Incentive," and 11(d), "Termination by the Company Without Cause," of the Agreement are the primary provisions at issue and provide as follows:

> 3(c) <u>Component – Long[-]Term Incentive</u>. If Employee is still employed on January 18, 2015, then after that date but before March 15, 2015, Employee shall receive an amount equal to 5% of the Net Margin of Sales of the New Build Capital Process Equipment business for projects where bookings are placed during

---

must be completed by looking at the contract alone. *See NNN Realty Advisors, Inc.*, 844 F.3d at 477-78.

the period from January 18, 2010 to March 15, 2016. Employee will not be eligible for this long[-]term incentive if he resigns or if he is terminated for cause prior to January 18, 2015. If Employee's employment terminates prior to January 18, 2015 due to death or disability, Employee or his estate will receive an amount equal to 5% of the Net Margin of Sales of the New Build Capital Process Equipment Business from January 18, 2010 to the date of Employee's termination within sixty (60) days following the date of termination. This value shall be calculated annually and the balance will accrue interest at the rate of 3% per year, payable at the time the long-term incentive is paid, if Employee is eligible for the long-term incentive.

11(d) Termination by the Company Without Cause. Employer may terminate Employee's employment without cause by giving Employer [*sic*] thirty (30) days written notice of termination, or in its discretion, pay in lieu of notice. Employer shall be obligated to pay Employee's base salary to the date such notice is effective, along with any commission and long-term incentive due pursuant to Section 3. In addition, if Employee signs a release of all claims in a form acceptable to Employer: (1) Employer will continue to pay Employee's base salary (including any applicable increases) pursuant to Employer's regular payroll practices for two years after Employee's employment terminates or until January 17, 2015, whichever comes first; and (2) Employer will pay the premiums for COBRA health insurance coverage for Employee and his family for six (6) months after Employee's employment terminates, if Employee is eligible for COBRA coverage and elects such coverage.

The district court concluded that Section 3(c) contains an unambiguous condition precedent to Sellers's entitlement to LTI benefits—that he be employed by CETCO on January 18, 2015. Finding that Sellers's employment was terminated on December 19, 2014, the district court held that he did not qualify for LTI benefits.

No. 17-20555

## Does the Agreement Contain an Unambiguous Condition Precedent?

A condition precedent is "an act or event that must take place before performance of a contractual obligation is due." *Ceydco Corp. v. PetroQuest Energy, L.L.C.*, 497 F.3d 485, 488 (5th Cir. 2007) (citing *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976)). Because of their "harshness in operation," conditions precedent are generally not favored under Texas law and should not be recognized if "another reasonable reading of the contract is possible" or the condition "would impose an absurd or impossible result." *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990). To make performance of a contractual obligation specifically conditional, generally a term "such as 'if,' 'provided,' 'on the condition that,' or some similar phrase of conditional language" must be included in the contract. *Ceydco Corp.*, 497 F.3d at 488 (quoting *Criswell*, 792 S.W.2d at 948). The absence of such a term is considered indicative of the parties' intent that a covenant be made, rather than a condition imposed. *Criswell*, 792 S.W.2d at 948*; Matter of Pirani v. Baharia, et al.*, 824 F.3d 483, 497 (5th Cir. 2016).

Section 11(d) of the contract concerning termination without cause allows Plaintiff any LTI due "pursuant to Section 3." Section 3(c) concerning LTI, in turn, starts with the clear statement that "[i]f Employee is still employed on January 18, 2015, then after that date but before March 15, 2015, Employee shall receive an amount equal to 5% of the Net Margin of Sales of the New Build Capital Process Equipment business for projects where bookings [have been placed]." This clause contains the "if-then" conditional language recognized under Texas jurisprudence as necessary for creating a condition precedent, and it is difficult to interpret such language as doing otherwise. *See Ceydco Corp.*, 497 F.3d at 488.

8

No. 17-20555

Sellers urges us to read Section 3(c) as unambiguously allowing him LTI benefits since it fails to specifically address eligibility for such benefits in the case of termination without cause, while specifically recognizing (1) termination of LTI benefit eligibility in the case of resignation or termination for cause before January 18, 2015 and (2) eligibility for LTI benefits to the date of termination in the case of termination due to death or disability. Such a construction, however, would require us to either ignore the unequivocal condition in the first sentence of Section 3(c) that Sellers be employed on January 18, 2015 to receive LTI benefits or to imply an exception to that general condition that creates an unexpressed covenant. We decline to do either. First, under Texas law courts should avoid interpreting contracts in ways that render provisions meaningless. *See NNN Realty Advisors, Inc.*, 844 F.3d at 478; *U.S. Metals, Inc. v. Liberty Mut. Grp.*, 490 S.W.3d 20, 23-24 (Tex. 2015). Second, Texas jurisprudence instructs that implied covenants are rare and should be recognized only where the expressed terms of the contract indicate that the implied covenant "was so clearly within the contemplation of the parties that they deemed it unnecessary to express it"—a circumstance not present here. *See Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A.*, 121 S.W.3d 742, 747-48 (Tex. 2003) (internal quotation marks and citation omitted).

Considering the foregoing, we agree with the district court that Section 3(c) unambiguously creates a condition precedent that required Sellers to be employed on January 18, 2015 to qualify for LTI benefits. Thus, for Sellers to be entitled to such benefits, the condition must either have been satisfied or qualify for having its fulfillment excused. We diverge from the district court on this point and find that the condition was satisfied, or alternatively, that under the facts of this case, it is appropriate to excuse fulfillment of the condition.

9

## Was the Condition Precedent Satisfied?

Whether the unambiguous condition precedent that Sellers be employed on January 18, 2015 was met hinges on the determination of the effective date of Sellers's termination from CETCO, which is governed by Section 11(d) of the Agreement—"Termination by the Company Without Cause." Section 11(d) provides in pertinent part as follows: "Employer may terminate Employee's employment without cause by giving Employer [*sic*] thirty (30) days written notice of termination, or in its discretion, pay in lieu of notice. Employer shall be obligated to pay Employee's base salary to the date such notice is effective, along with any commission and long-term incentive due pursuant to Section 3." Both parties concede that Sellers did not receive thirty days written notice of termination under Section 11(d). Thus, pursuant to the plain language of the section, to effectively terminate Sellers without cause, Defendants were required to pay him an additional 30 days' worth of salary.[6]

It is undisputed that at or around the end of Sellers's employment with Defendants, he was tendered $14,205—a month's salary—in accordance with Section 11(d). In his response to Defendants' motion for summary judgment and in his affidavit attached thereto, Sellers indicates that he received the $14,205 payment on January 15, 2015. Defendants do not contradict this.

---

[6] Perplexingly, the parties fail to discuss the requirements of Section 11(d) in any meaningful way. Instead, with little to no explanation, each offers various dates as the effective date of Sellers's termination from CETCO. Defendants, for their part, simply urge in a conclusory manner that Sellers was terminated prior to the imperative date of January 18, 2015. Sellers, on the other hand, indicates in his response to Defendants' motion for summary judgment and in his own affidavit attached thereto that December 20, 2014 was the date of his termination. This was the date on which, according to his deposition testimony, he received a termination package. In his original petition and brief, however, Sellers states without explanation that he was fired on December 19, 2014. In his brief, Sellers also states that he was paid "a month's base salary, making the effective date of termination January 18, 2015." Given that the parties specifically contemplated in Section 11(d) of the Agreement how termination without cause would be effectuated, the terms of the provision dictate the effective date of Sellers's termination.

No. 17-20555

Since under the plain language of Section 11(d), the January 15, 2015 payment was to cover an additional thirty days' worth of wages, we find that the effective date of Sellers's termination was February 14, 2015. Thus, the condition precedent requiring Sellers to be employed on January 15, 2015 to receive his LTI benefits was met. The district court erred in concluding otherwise.

Even if the condition precedent was not technically met here, however, we find it appropriate under the circumstances of this case to deem the condition fulfilled or excuse its fulfillment. Under Texas jurisprudence, if one party prevents another from performing a condition precedent or renders its fulfillment impossible, then the condition may be considered fulfilled.[7] Here, if Defendants effectively terminated Sellers's employment in December 2014 (as opposed to in February 2015), as they suggest, then they unilaterally prevented fulfillment of the condition at issue and cannot rely on nonfulfillment to deny the LTI benefits otherwise contractually due to Sellers.

## CONCLUSION

For the reasons stated herein, we REVERSE the district court's grant of summary judgment in favor of Defendants on the LTI portion of Sellers's breach of contract claim. We further REMAND to the district court for the limited purpose of determining the amount of LTI benefits due to Sellers and entering judgment in favor of Sellers in such amount.[8]

---

[7] *See, e.g.*, *Donaldson v. Dig. Gen. Sys.*, 168 S.W.3d 909, 916 (Tex. Civ. App.—Dallas 2005) ("[I]f one party prevents the other from performing a condition precedent, then the condition is considered as fulfilled" (internal quotation marks and citation omitted)); *D&M Specialties, Inc. v. Apache Creek Props., L.C.*, 2014 WL 12493290, at *5 (Tex. W.D. Aug. 21, 2014 (citing *Houston Cty. v. Leo L. Landauer & Assocs., Inc.*, 424 S.W.2d 458, 464 (Tex. Civ. App.—Tyler 1968)); *Clear Lake City Water Auth. v. Friendswood Dev. Co., Ltd.*, 344 S.W.3d 514, 519 (Tex. Civ. App.—Houston [14th Dist.] 2011) (recognizing that "a party who prevents or makes impossible the occurrence of a condition precedent upon which its liability under a contract depends cannot rely on the nonoccurrence to escape liability" (internal quotation marks and citation omitted)).

[8] Sellers contends that $428,681.71 is the amount due to him in LTI benefits. Defendants do not specifically contradict this figure in their pleadings or with competent

No. 17-20555

---

summary judgment evidence.  However, a letter from Defense counsel to Sellers's counsel dated October 26, 2015 that appears in the record indicates that CETCO calculates the amount of LTI that would be due to Sellers as $426,111.81.  Because of this discrepancy and because Defendants did not and were not required to present competent summary judgment evidence regarding the amount of LTI benefits due to Sellers should he prevail on his LTI benefits breach of contract claim, we remand to the district court for the sole purpose of determining the exact amount of LTI benefits due to Sellers and entering judgment in such amount.  In doing so, it is our hope that the parties can reach an agreement on the specific amount due.